The next case today is Hermandad de Empleados del Fondo del Seguro del Estada Incorporated et al. versus the Financial Oversight Management Board et al. Appeal number 19-2028. I lost Ms. Attorney Mendez. Yes, I'm here. Can you see me? Yes, thank you. Okay, Counsel, could you please introduce yourself for the record? Yes, good morning. This is Jessica Mendez-Kohlberg on behalf of the appellant. Good morning, and are you ready to proceed? Yes, I am, Your Honor. Go ahead. Thank you, May. May it please the Court. We would like to reserve two minutes of our time for rebuttal. May. Appellants are two labor unions whose members work at the State Insurance Fund Corporation of Puerto Rico, for which I'll be speaking. The unions filed a complaint before the District Court seeking declaratory judgment that Laws 66 of 2014 and Laws 3, 8, and 26 of 2017, enacted by the Commonwealth, violate the contract clause of the United States Constitution and the collective bargaining clause of the Commonwealth's Constitution. And in that respect, they requested compensation for their damages. Now, the complaint was dismissed by the District Court for various reasons, and it is important to stress the stage of the proceedings we are in. When deciding on a motion to dismiss, the Court must accept as true all the well-pleaded facts and draw all reasonable inferences in plaintiff's favor and make sure that based on the facts, plaintiffs establish a plausible claim that justifies that they are entitled to a remedy. So in that sense, plaintiffs alleged not only a substantial impairment to their collective bargaining agreements, but they specified and detailed the degree of that impairment. They specified clause by clause of the collective bargaining agreements that were affected by the challenged legislation, and also that this corporation is a public corporation that generates its own incomes, so it does not depend on the Commonwealth's general fund. And most importantly, that the corporation is solvent, so there is no need to impose fiscal reforms on it. Still, appellants did suggest alternatives that were available to the government. Excuse me, I do have a question about the finances. Where do the profits go? The profits are of the corporation, of the own corporation. Yes, the Commonwealth has enacted legislation that obligates the corporation to transfer funds to the Commonwealth for the general fund liquidity, but the income and the revenues go to the corporation itself. Who owns the corporation? The corporation is created by the Organic Act, enacted by the Legislative Assembly, but it is created as an entity different and independent from the Commonwealth, with its own revenues, its own budget, and its own management for its expenses. So, under current law, if the corporation's revenues fall off drastically, who makes up the loss? It would be the Commonwealth. And yes, the Commonwealth, the Legislative Assembly has the authority to enact legislation to address the fiscal crisis of any public corporation. But our point here is that this corporation, as of this, at the moment of the enactment of these laws, that was to address a financial crisis of the central government, still included the public corporations, without any justification of the necessity to include the public corporations. So, in that sense, that goes to the contract loss claim, because the state should provide the reasonableness and necessity of this legislation to serve an important governmental purpose. Now... Why isn't it in the Commonwealth's interest to structure its public corporations in such a way that maximizes the revenue stream to the Commonwealth? It is in the Commonwealth's interest, but the problem here is that we cannot take lightly the fact that these contractual obligations are protected under the Constitution. So, if the state is going to impair those contractual obligations, it has to establish the reasonableness and the necessity of that impairment with respect to a corporation that is not going through the financial crisis that is going through the Commonwealth. So, that's why we established that the challenge legislation is unreasonable with respect to the fund, and that in itself is a factual allegation that the district courts should have deemed as true. Now, appellants have alleged that because the corporation is solvent, the Commonwealth even enacted legislation ordering to transfer funds. So, this raises the question of how reasonable and necessary is this legislation then with respect to the corporation, and to the point of the state establishing the reasonableness... Could you describe... Yes? Could we just work through the impairments, the actual impairments? The actual impairments to the collective bargaining agreements. There are... Yeah, the specific ones that you have in mind, because isn't the right way to analyze this impairment by impairment, whether the impairment of it is reasonable? Yes, Your Honor, and we... There's a set of impairments which directly affect the, effectively, the cost side of the ledger for the public corporation. Yes, Your Honor. And those impairments take the form of reducing what the public corporation has to pay out to its employees, right? Yes, yes. And in theory, those could be justified. I know you can test this. Those could be justified on the ground that, well, if they have to pay out less to their employees, they'd have more money to give to the Commonwealth if the Commonwealth needed it. So, that'd be that category. There's another category of impairments which are not about reducing the payouts to employees, but are instead, as I understood it, about the mobility of the employees. Yes. So, what's the challenge there? Could you just describe what that impairment is? What's the rule that's being... that's in the contract that the Puerto Rico law impairs? And then if you could just explain to me why, even if the financial rationale that might apply to the contractual agreement would not be. Yes. With respect to the mobility, we have alleged that mobility doesn't necessarily serve an important governmental purpose. It provides the government the ability to move employees from one agency or public corporation to the other. Now, with respect to our clients who are members of a union, the collective bargaining agreements established a set of benefits that not necessarily would be equal to those of the employees of the central government. And if the issue is to have some savings for the Commonwealth and have the transfer of employee service and savings for the Commonwealth, the Legislative Assembly evaluated that in previous legislations. When in 2009, it was enacted a legislation for... Does the impairment take the effect of only restricting their fringe benefits? I just am not understanding how it works. It's the fringe benefits, but also the mobility, and also it goes to the overtime payment as well. And with the fringe benefits, for example, vacations and sick leave days that are accumulated, they are no longer allowed to be paid for the accumulated days that they have for vacation. They would have to use the vacation days or they would be lost. So it's a pecuniary interest as well. Another way to put it, is there any impairment that does not take the form of a pecuniary interest in that way? I would say that maybe the mobility... I don't know if I'm fully understanding it. What is the contractual agreement that the law impairs with respect to mobility? Well, the problem is that these employees are represented by the union and they negotiated this collective bargaining agreement with this employer, which is the corporation. If the mobility would imply that the employee would be in another agency and not necessarily could be represented by the union because it's another employer, it's another agency and not the agency or the instrumentality that negotiated the collective bargaining agreement with the corporation, which is the employer. So would that put the employee in a different bargaining unit? Well, that's our position, that it would impair that right of the employee to be represented by the union with respect to its original employer. But would a transfer automatically put that person into a different union, labor union? No, no. It would put the person in a different agency, but with respect to the union, the union not necessarily would be able to represent that person. Is there any provision in the collective bargaining agreement that prohibits a transfer? Well, let's remember that the collective bargaining agreement was negotiated with respect to this employee, with this employer, and didn't have that overview of the capability of that employee being moved to another agency. Does that mean there isn't one? There isn't. So the only impairment then is of the benefits that would be lost as a consequence of the mobility. I'm sorry, Yaron, could you repeat that? The only impairment is of the benefits that would be lost as a consequence of the transfer. Yes, that's with respect to the mobility and also the other clauses that represent pecuniary interest. Now, I wanted to... So if there was a transfer, would you continue to represent the economic interests of that person, or would that person be automatically excluded from your union? It would be excluded because the union could only represent its members in front of the corporation, which is the employer. And to that respect of the corporations being included into the scope of this legislation, if we look at the Statement of Motives of Law 66, for example, we would see that the only justification of the Legislative Assembly in the Statement of Motives is that, and I quote, they are part of the government. But this, in our view, is not enough to sustain the constitutional violation of the Contracts Clause. If we look at Law 3, for example, it says that it's pursued the similar goals and similar means as Law 66, so the same reasoning would apply with respect to Law 8, which is the mobility. We have argued that that does not serve an important governmental purpose. And I believe... It's my understanding that some benefits like the vacation time have been restored. Is that correct? Yes, and I was going to get to that, Your Honor. Is that restored across the board for all Commonwealth employees or employees of all Commonwealth corporations? Yes, Your Honor. All government employees and union members as well. We are talking about Law 176 that was enacted in 2019, and actually, appellees make a reference to that law in their briefs. But what I want to point out about that law is that it did restore annual vacation leave and sick leave for all the government employees and the union members. But what the appellees misrepresent to the court in their briefs is that the legislative assembly restored these benefits because it was a determination that the fringe benefits were no longer necessary, that this limitation on the fringe benefits was no longer necessary. But the truth is that when we look at the statement of motives of Law 176, we see that it expressly recognizes that the provisions of the legislation have had a negative impact on public employees. And for these reasons, says the statement of motives, is that the legislative assembly considers it worthwhile to restore the previous scheme before the challenge legislation. So this goes to the point that the enactment of subsequent laws that shows the imposition, the enactment of these subsequent laws shows the imposition of these legislation as arbitrary, especially to the workers of this corporation that is solvent. And also- Does it show that it's arbitrary or does it show that Puerto Rico is getting more fiscally stable? It's not, Your Honor. Unfortunately, it's not. It's what the legislative assembly establishes in the reasons for enacting this law is that the impairment of this benefits, vacations, and sick leave had the negative impact on employees, especially on new hire and new employees, because of the limitation on those licenses for vacation and sick leave. So what they are effect on the employees, not necessarily that the financial situation has gotten any better. Now, it is important- I think your time is up. Is that right, Dan? Yes, Judge. I'm sorry you didn't hear me. The time is up. Okay. Thank you, Counselor. Thank you, Your Honor. Could you state your name for the record? Yes, Your Honor. Mark Harris on behalf of the Appellees. And are you ready to proceed? I am, yes. Thank you, Your Honor. May it please the Court. The first thing I want to point out is that listening to Appellant's arguments, you might have the impression that the Commonwealth targeted organized labor, perhaps even these two unions, as a way of addressing the financial crisis for which these unions and their employer were not to blame. The reality, though, is that, as Your Honors know, this is a government-wide and island-wide financial crisis. I just thought on that point, I thought the argument was almost the opposite. Not that they targeted them, but that they needlessly included them in just a blunderbuss piece of legislation without thinking through how inapplicable public corporations might be, given their different fiscal relationship to the Commonwealth relative to other Commonwealth agencies. And so treating those employees the same doesn't really fit with the rationale that generally applies to governmental employees. I think, Your Honor, that's at this point, their focus on the first argument, I think, is in that direction. Maybe I'll just go straight to that. They have basically two arguments under the Contracts Clause. One of them is that they think that because the CFSC is allegedly solvent, then basically no measures to save costs or to reduce expenses could be reasonable or necessary. And then the second argument is that even if that's not correct, they want to argue that have actually proposed alternative measures which show that these particular measures were not reasonable or necessary. So the first argument, which is that it's almost as a per se matter, you can't include an agency or a public corporation which happens to be solvent, that can't be right. It's common sense that the Commonwealth, when it aims to cut costs government-wide, it ought to take into account every single department, every single public corporation, including the CFSC. The CFSC, like every other public corporation, is an instrumentality of the government of the Commonwealth. As I think Ms. Mendez mentioned, it's created by organic statute. It was created in 1935. I think Judge Payada asked what happens to the excess cash that it produces. Until one of the recent laws, the answer was that some of its profits actually went to another entity called the Industrial Commission. That's, I'm just quoting what the statutes say. But much more important is that in the last of the four statutes that's at issue here, 26-2017, it explicitly held, decided that all profits would be transferred from all public corporations to the general fund. In fact, one law before that, the law that's titled 8-2017, implemented what they called a one-government employment system. So now all employees of all public corporations on the island and the central government employees, they all have the same employer. So at this point, there's one fund that pays for everything. It's only rational that given that situation, the government would have a very strong interest in making sure that every agency and every public corporation was operating as efficiently, as leanly, as profitably as possible. This was not targeted at CFSE. This was, as I said, government-wide. It obviously wouldn't make sense and it wouldn't be practical to look through and to ignore the parts of the government or the agencies which happen to be doing well. I'll just mention as well, the only reason that CFSE happens to be, I believe, as they've alleged, in better financial shape is that the legislature, when it set up the funding mechanism for the CFSE, arranged for it to be paid for by employer contributions throughout the island. But that's a legislative artifact. It happens to be because the legislature set it up that way. As Ms. Mendez said in response to one of your Honor's questions, the backstop is the Commonwealth. So again, the Commonwealth has that interest as well to make sure that if employer contributions happen to fall off, that it will be running as efficiently and as profitably and cost-free as possible in order to be money to pay for other things as well. Judge Barron, you asked about other measures that may not be, impairments that may not be tied specifically to a cost incentive. I'm not clear on that myself. I had thought from the briefing that they were alleging that some of the mobility provisions, there were provisions in their CBAs which limited the power to move one employee from one public corporation or one governmental department to another. I thought that's what they were alleging. If they're not alleging that now, that's fine. But to the extent that they were or they are, I think the answer to that point is, clearly, it's an important government interest to make sure that there aren't widespread layoffs. And in fact, the legislature said in the preface of the last law, 26-2017, that they estimated that if there weren't reforms that tackled mobility, there might be widespread layoffs, as well as a 20% across the board cut in salaries for all public employees. That would obviously have disastrous effects on the economy. And in response to your question, Judge Thompson, about what would happen concerning whether people would end up working for different employers, as I said, that's solved by the fact that the third law, 8-2017, creates a one-employer governmental system. So it's not the case anymore that you'd be taking somebody out of, let's just say, the CFSC, an employee who works there, and then transferring them to another employer. It's all now the same employer. So have they abolished state corporations? I don't understand that they've abolished them. I believe what's happening now is that the legal employer is now the government as a whole. These entities still exist, yes. Is there a change in the Commonwealth's responsibility for the corporation's debt? I don't know that that has changed, Your Honor. My understanding is, again, that the way it's set up right now is that employer contributions, the CFSC provides workman's comp for all employees throughout the Commonwealth, not just government employees, everybody. And it's paid for, as I understand it, by employer contributions. In other words, private employers as well as, I guess, the public employers. I don't understand that that has changed. But given the predicament of the island, and given the general state of the economy there, if it were to happen that the employers couldn't make the same contributions as before, or they weren't able to pay what the costs are of the CFSC, my understanding is that the Commonwealth is the payer of last resort. I think that's the point. I think that's what Ms. Mendez was saying. Ultimately, because this is a public corporation created by Puerto Rican law, someone's got to keep it going, and that's the Commonwealth. Can I understand what's the current status of the CBA? Who is the employer in the CBA contract at present? It's the public corporation, not Puerto Rico, right? As I understand it, the CFSC still exists. The bargaining agreement is still with the CFC? Well, what's complicated here, Your Honor, is that the CBA is expired. And so Ms. Mendez probably can speak to this better than I can. But from what I understand, they've expired. They each had four-year terms or something along those lines. But they remain in effect until there's a replacement one. Just the way they say it's not expired, it's still in effect for legal purposes. I guess that's right. I guess that's right. So what I don't understand is the change, which now makes there be one employer. Has that substituted a new employer for purposes of bargaining purposes, or which would mean that the old contract doesn't exist? I just don't quite get how the change to one employer interacts with a bargaining agreement with a different named employer. I don't know the answer to that either, Your Honor. The appellants haven't really pled this issue. The only point, really, that I wanted to make with this was just to say that I think in answer to one of Your Honor's questions, Ms. Mendez was saying that the problem here is that now people are going to have to work for some other entity and maybe there'll be other different arrangements or their rights wouldn't be respected. That's not my understanding. My understanding is that the part of shifting to a one employer framework is that existing legal agreements would be in effect. Your understanding was like mine, that the complaint alleged that one of the impairments was of a provision in the CBA that would have restricted transfer. Correct. Okay. Could you run me again what the rationale is as to why it's reasonable to impair that contract term? So my understanding is that the idea would be that if there is a source of labor, let's just say one agency has many employees and has more cash available to pay for them, and another agency or another Department of Government isn't able to pay for its payroll and would have to lay people off, you could transfer sort of the excess labor in order to make sure that the second agency is able to do its job and that public services are still being provided. So it's not as you transfer them, but they'd still be paid by CFCE? Again, in this case, it may not. Can you pay them after they're transferred? Is that how it would work? I'm sorry. In this case, it may not matter anymore because they switch to this one government employer manner. But I think the idea was that if it turned out that one particular branch, as I said, of the government or one particular department wasn't able to finance to pay for its employees, you would have a source of labor someplace else. It sounds like labor unions have been functionally dissolved in Puerto Rico. I'm not sure what they do now. Let me maybe just reset here. Part of the problem here is I'm not exactly sure what appellants actually are arguing here. Their main contractual contract clause complaint seems to be about the benefits and about the reduction in vacation pay and sick pay. It sounds like based on what they said today, they're not complaining about, in response to your question, Judge Barron, they're not complaining about any other provisions. I'm not sure exactly what they're alleging. It may be a question for Ms. Mendez. As far as the cost, the benefits, the reduction in vacation pay, sick pay, and the ability to monetize those benefits when they leave employment, again, the fact that the CFSC is solvent is not a reason—wouldn't be reasonable and necessary to include its employees or include people who work there within any kind of commonwealth-wide solution. Their other argument is that they say that they have actually provided other alternative measures, and because those alternative measures could have been implemented, then these measures are not reasonable or necessary. This argument fails because they've really not pleaded almost anything concerning what those alternative measures are. As the Fortuno case held, their obligation is to plead factual content suggesting that other alternatives might exist, and they just simply haven't done that. What they've said are generic solutions along the lines of, you know, increase taxes, decrease costs, and all the problems are solved. But you could allege that about any agency, any governmental body that's having financial difficulties, that doesn't satisfy their burden. As the Second Circuit said in the Buffalo Teachers case, which the Fortuno court cited, it's always the case that to meet a financial emergency, taxes could conceivably be raised. The burden on the plaintiffs is to show that that's a plausible solution, not just that, you know, it could happen. If somebody raised taxes, all of a sudden there'd be more money. Could you go back to the transfer issue, just because if it turns out that your opponent is saying that that is still alive in the case and they haven't abandoned it? I want to make sure I understand what the government's theory, what Puerto Rico's theory is as to why that makes sense in this context. So if you could just take me through it. The idea is you have a labor shortage in one department, so you'd like to take people from the public corporation and move them over to help deal with it. Under the way the provisions work, who pays that new employee? With the one government system, they're all being paid out of the same fund. So this new employee— Does that fund include the CFCE profits, or is the idea now that they—does some extra step have to be taken to draw on those funds? Does the money that would have gone to that employee travel with the employee? So Law 66-26-2017, which is the last of the four laws, as I mentioned, it has a provision, it's Article 4.01, which provides that any profits of any public corporation will be transferred to the general fund. So in other words, they created one pool of money now. So the point is, given that, you want to make sure then that every agency that performs important essential public services has enough employees that work there, that they should be—that they're able to do their job, and also that there's a—that people aren't working in an agency—you don't have too many people who are overpaid in an agency that, you know, isn't as important to the public services being provided. That's all that's going on here, really. It's a right size of government of the whole. But the transferred employee is no longer represented by the union. I don't know the answer to that question, Your Honor. It sounds like from what Ms. Mendez said, they're all being represented together. Basically, I'm saying— There's no such things as labor unions anymore in Puerto Rico. But, Judge Coyote? But aren't you basically saying, sort of to make a baseball analogy, that the Commonwealth has decided they'd rather have one-third basement and one shortstop than have two-third basement, neither one of which they can move to short to fill a hole? That's much better. It's a much better analogy than what I said. Yes, Your Honor. Exactly. And that's a financial savings in efficiency. Yes, it's a financial savings. It's efficiency. It's also making sure that agencies that provide public services to the citizenry are going to be fully staffed and that you have the right, as you said, you don't want to have three people on three base. You want to make sure that every base is covered. That's literally what's going on here. Judge Thompson's comment, though, in the analogy you just gave, the change that Judge Coyote proposes does not result in the baseball player losing their union representation. So the question is, does this operate in a way that they effectively do? Now, it may be that that kind of impairment isn't actually being challenged here. To the extent it does, but I guess I just am not understanding, who is their—they're being represented by a union presently with respect to some employer who's the other party to the bargain agreement. I don't—I can't quite tell who that is, and I'm really having trouble seeing who would be after their transfer. I don't have an answer. I don't know what happens to these contracts after the passage of 8-2017. I'm not sure that it's been worked out. I just—I simply don't know the answer to that. As I understand it, they're not complaining. That law was passed in 2017. I don't think anybody's complaining right now that they've been moved, and as a result of that, they don't have a union anymore or that their bargaining unit is not the same. It seems that's not what anybody's complaint is, and so somehow that's being managed. I take it it's being managed because they're all represented still by the same union. That hasn't changed any, so—and that's why they're not alleging that as an impairment. Judge, that would be time. Okay. Thank you, Counselor. Thank you, Your Honor. There was a little bit of rebuttal time, I believe. Yes, Judge. Attorney Mendez? Yes, can you hear me okay? Yes. Okay. Thank you. Thank you. Your Honor, I would like to stress the point of the transfers and the mobility first because we don't see any justification as to any savings for the government in transferring employees because you are only transferring the expense from one corporation to another agency. Now, with respect to the issue of if the law—who is the employer? Well, it's going to be the agency or the Commonwealth once the employee is transferred. Right now, as of right now, employees are employees of the corporation and are being paid by the corporation. But what happens if that employee is transferred to another agency? And the law is not clear on who is going to become the employer because it only says a single employer. And I might add that even though all the laws establish a mobility—dispositions about mobility, Law 8 of 2017 was actually a campaign promise of former Governor Rosselló. It says so in the statement of motives when it refers to the— On the mobility question, just for standing purposes, no plaintiff here alleges that they have been transferred or are threatened to be transferred. Is that right? Well, it was alleged in the complaint, along with all the other benefits that aren't impaired, that the right of the employee to be represented by its union and being working for its employer, it was— My question is, do we have any plaintiff before us who says that they either had been transferred pursuant to that law or that there's an imminent threat of a transfer? The law hasn't been implemented. They haven't been transferred, but still, the law was enacted and it was incorporated into the fiscal plan as well. So there is that risk of employees being transferred. It hasn't been implemented yet. Now, with respect to—I wanted to make the point of the alternatives, because what our principal argument is that the corporation is solvent. So why should the employees have the burden to establish alternatives for the central government when the corporation they work for is solvent? I believe my time is up. Yes. Any other questions from the panel before we disconnect? All right. Thank you, Counselor. Thank you. I appreciate everyone's arguments. That concludes arguments for today. The session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counselor, you may disconnect from the meeting.